IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| RICHARD WAYNE SPARKS, | CV 21–20–BU–BMM |
| Plaintiff, | |
| vs. | ORDER |
| LACIE WILLIAMS, MARK JOHNSON, ED LESTER, PATRICK SULLIVAN, ANDY ODNEY, WALTER JOHNSON, MIKE REGAN, CAMERAN GARDIPEE, ANGEL HOUSE, JOHN SESTRICH, KATHY FOLIO, LACEY DOWNEY, TAMMY SHEA, RILEY VAUGHN, JAMI TREGEAR, AUSTAN BOSCH, JOSH ROBINSON, JOREY THATCHER, SHELLEY MCDONALD, and JOHN GARDIPEE,[1] | |
| Defendants. | |

Plaintiff Richard Wayne Sparks, a state prisoner proceeding pro se, alleges that the lack of adequate handicap shower facilities at the Butte-Silver Bow Detention Center ("BSBDC") violate the Eighth Amendment, Fourteenth Amendment, and the Americans with Disabilities Act ("ADA") because they lack a detachable hose and handheld nozzle. (Doc. 18.) Defendants are various

---

[1] The caption is amended to reflect the proper spelling of certain defendant names. (*See* Doc. 35 at n.1, 2, 3, 4, 5, 6, 7.)

1

correctional supervisors and officers, as well as Butte-Silver Bow County Sheriff Ed Lester. (*See id.*) For the reasons provided below, Defendants' cross-motion for summary judgment, (Doc. 82), is granted, and Sparks' various motions, (*see* Docs. 68, 73, 74, 81, 91), are denied.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences must be viewed in the light most favorable to the non-moving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). On cross-motions for summary judgment, it is the court's "independent duty to review each cross-motion and its supporting evidence . . . to determine whether the evidence demonstrates a genuine issue of material fact." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1137 (9th Cir. 2001). Each motion is therefore evaluated separately, "giving the nonmoving party in each instance the benefit of all reasonable inferences." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016) (quotation marks omitted).

**BACKGROUND**

The facts necessary to resolve the present motions are undisputed. Sparks was a pretrial detainee at BSBDC from September 18, 2020 to April 2, 2021, and from April 6, 2021 to July 8, 2021. (*See* Doc. 35 at 2.) Sparks became a convicted and sentenced state prisoner on July 8, 2021, and remained at BSBDC until July 14, 2021, when he was transferred to Montana State Prison. (*Id.*) Sparks has a number of health issues, including a clubfoot that impacts his mobility. (*See* Doc. 78 at 5.) As it relates to his incarceration, Sparks has a "bottom bunk/bottom tier classification." (Doc. 83 at 9.)

While at BSBDC, Sparks filed a number of Inmate Grievance and Request forms regarding the handicap shower in C Pod. (*See generally* Doc. 76-2.) According to Sparks, the handicap shower did not work because it was missing a hose and handheld nozzle and there was no water coming out of the hose attachment area. (*See, e.g.*, *id.* at 11.) In response to his complaints, staff members initially indicated that they had or would contact maintenance. (*See id.* at 10, 11, 38.) Staff subsequently informed Sparks that the showers did not have hoses or nozzles because it was a "safety/security concern" and that the existing showers provided adequate access. (*Id.* at 46.) That second response is consistent with Defendants' litigation position: no such hoses or equipment have ever been made available to inmates due to safety concerns, (Doc. 84 at ¶ 9), and all of the showers

3

"are handicap accessible, equipped with lower and higher mounted spray nozzles, grab bars, and benches that fold down to allow inmates to sit while showering, and are operated by a pushbutton that is reachable from either a seated or a standing position at a pre-set temperature," (*id.* ¶ 10). Staff also told Sparks that he could use the handicap facilities in the segregated housing unit, but he refused because fewer amenities are available in that unit. (*See* Doc. 76-2 at 1, 54.)

Sparks filed his original complaint in March 2021, (Doc. 2), and his Amended Complaint on May 20, 2021, (Doc. 18). In his amended pleading, Sparks names 20 defendants, including sergeant shift supervisors and detention officers at BSBDC, as well as Sheriff Ed Lester. (*Id.*) He alleges that Defendants have continually violated the ADA and his Eighth and Fourteenth Amendment rights by denying him a handicap accessible shower, which he defines as one that has a hose and handheld nozzle that complies with the 2010 ADA Standards. (*See* Doc. 81 at 3.) Sparks therefore requests: (1) judicial notice of the 2010 ADA Standards, (Doc. 68); (2) a trial schedule be entered in light of failed settlement efforts, (Doc. 73); (3) summary judgment in his favor, (Doc. 74); (4) to exclude the testimony of Defendants' prison conditions expert, (Doc. 81); and (5) the appointment of counsel, (Doc. 91). Defendants object to all of Sparks' motions, (*see* Docs. 69, 78, 79, 88, 90), and have filed a cross-motion for summary judgment, (Doc. 82).

ANALYSIS

This case turns on whether BSBDC was either deliberately indifferent to Sparks' medical needs or in violation of the ADA for failing to provide him with a hose and nozzle handicap shower.[2] Because it was not, summary judgment is granted in favor of Defendants.

I. **Constitutional Claims**

Sparks was a pretrial detainee at the time he filed his Amended Complaint. (*See* Doc. 35 at 2.) As such, the conditions of his confinement, specifically his access to adequate medical care, are assessed under the Due Process Clause of the Fourteenth Amendment. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018). The elements of such a claim are as follows:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. "With respect to the third element, the defendant's conduct must be

---

[2] Defendants' summary judgment brief also addresses a broader claim for denial of medical care unassociated with the showers. (*See* Doc. 83 at 2.) As recognized in Defendants' reply brief, no such claim was made or argued. (*See* Doc. 90 at 2.) Sparks' pleadings are limited to shower-based allegations. (*See also* Doc. 89 at 4 (responding to Fair Housing Act claims raised for the first time on summary judgment).)

objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (cleaned up). Ultimately, "the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (quotation marks and footnote omitted).

The first element is met insofar as BSBDC affirmatively has stated that it does not offer a hose and handheld nozzle handicap shower. (*See* Doc. 84 at ¶ 9.) The remaining elements are neither satisfied nor subject to a genuine factual dispute. Sparks presents no evidence that the absence of a hose and nozzle system places him at substantial risk of serious harm. Even accepting his assessment of his limited mobility, (*see* Doc. 18-2 at 2), BSBDC's showers provide a bench, handrails, and a pushbutton start, (Doc. 84 at ¶ 10). Thus, while forcing Sparks to stand in a normal shower arguably could pose a "substantial risk," BSBDC has taken reasonable measures to abate that risk. Additionally, Sparks presents no evidence that this accommodation was insufficient or caused him injury. Accordingly, Defendants' failure to provide a shower with a hose and handheld nozzle does not amount to deliberate indifference under the applicable objective standard.

Sparks points to one document in the record that indicates one of the handicap shower nozzles was not functioning at one point after he filed his Amended Complaint. On May 30, 2021, Jamie Tregear emailed the maintenance

6

crew and Chief Detention Officer Mark Johnson stating, "Just wanted to let you know that the handicap shower nozzle in min. housing is still not working. When one of you stops up could you please take a look." (Doc. 72-2 at 52.) That same document indicates, however, that maintenance completed the repair on June 3, 2021. (*See id.*) Sparks argues that Tregear's use of "still" indicates that the handicap shower nozzle was continually nonfunctional, (*see* Doc. 74-1 at 2). No evidence exists to substantiate that interpretation. Moreover, none of Sparks's grievances or requests stated that the existing nozzles were not working. Rather, as discussed above, Sparks consistently has challenged the absence of a separate hose and nozzle. Thus, this email does not bear on his claim.

Based on the foregoing, summary judgment is granted in Defendants' favor on Sparks's constitutional claim.

**II.   ADA**

Sparks further alleges that the absence of a hose and handheld nozzle violates the ADA, specifically the 2010 Standards. Defendants, on the other hand, insist that BSBDC is not bound by these standards because it was constructed in 2004 and therefore remains subject to the 1991 Standards. Defendants are correct, and because the undisputed record shows the 1991 Standards are met here, summary judgment is also granted in Defendants' favor on Sparks' ADA claim.

Under Title II of the ADA, "no qualified individual with a disability shall,

7

by reason of such disability, be excluded from participation in or be denied the benefits of services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Accordingly, to prove a claim for disability discrimination under Title II, Sparks must show the following:

> (1) [he] is an individual with a disability; (2) [he] is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) [he] was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam). Defendants challenge every element, including Sparks' disability. Given the mixed record on Sparks' disability, the dispositive question involves whether BSBDC was required to provide a hose and handheld nozzle as a reasonable accommodation. Because it was not, Sparks's ADA claim fails as matter of law.

Pursuant to the federal regulations accompanying Title II, a public entity, like BSBDC, must "operate each service, program or activity so that the service, program or activity, when viewed in its entirety, is readily accessible and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). This accessibility requires compliance with the applicable ADA standards at the time of construction or alteration. *See id.* § 35.151(c). More specifically, "[e]lements that have not been altered in existing facilities on or after March 15, 2012 and that comply with the

8

corresponding technical and scoping specifications for those elements in . . . the 1991 Standards . . . are not required to be modified in order to comply the requirements set forth in the 2010 Standards." *Id.* § 35.150(b)(2)(i). Here, the difference between the 1991 and 2010 Standards is important because while they both require a detachable handheld nozzle with a hose,[3] the 1991 Standards include the following exception: "In unmonitored facilities where vandalism is a consideration, a fixed shower head mounted at 48 in . . . above the shower floor may be used in lieu of a hand-held shower head." *See* 28 C.F.R. Pt. 36 App. A 4.21.6.

Here, BSBDC was constructed in 2004. (*See* Doc. 84 at ¶ 3.) Thus, absent alterations or modifications, the facility is subject to the 1991 Standards. *See* 28 C.F.R. § 35.150(b)(2)(i). According to Mark Johnson, who has been the Chief Detention Officer at BSBDC since November 2009, (*see* Doc. 84 at ¶ 1), "[f]rom the time BSBDC was built in 2004, no hoses or detachable spray nozzles were ever installed in the showers," (*id.* ¶ 9). Sparks disputes this claim, however, stating in some of his grievances that a maintenance person named "Justin" told him that he

---

[3] Sparks requests the Court take judicial notice of the 2010 Standards. (*See* Doc. 68.) "These are not facts, but rather the minimum guidelines and requirements for the standards issued under the authority of the ADA and are used to interpret the ADA and its regulations." *See Feezor v. Excel Stockton, LLC*, 2013 WL 2485623, at *3 (E.D. Cal. June 10, 2013). Thus, while notice is not appropriate, the Court will consider them in resolving the present motions.

was "ordered" to remove the hoses and nozzles from the shower facility years ago. (*See* Doc. 72-2 at 24, 42.) Defendants have carried their summary judgment burden. As a result, Sparks "must respond with more than mere hearsay," *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1104 (9th Cir. 1986), and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Defendants are correct that the 1991 Standards apply and, given the vandalism concerns regarding a flexible hose and nozzle in a detention center, the presence of a fixed shower head meets the requirements of these standards. In fact, Sparks concedes that the showers are otherwise compliant. (*See* Doc. 81-1 at 3 ("Plaintiff states that it is tru [sic] that the handicap showers at the detention center do meet some requirements for various other handicap needs, these handicap showers were not in compliance to ADA Regulations in regards to Hoses [sic] and hand held nozzles.") (emphasis in original).) Sparks's ADA claim therefore likewise fails. *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1137 (9th Cir. 2001) (requiring the plaintiff to "show that the accommodations offered by the County were not reasonable").

## CONCLUSION

Based on the foregoing, **IT IS ORDERED** that Defendants' cross-motion

for summary judgment (Doc. 82) is **GRANTED** and Sparks' motion for summary judgment (Doc. 74) is **DENIED**.

**IT IS FURTHER ORDERED** that Sparks' Notice of Newly Discovered Evidence (Doc. 68), construed as a motion for judicial notice, is **DENIED**.

**IT IS FURTHER ORDERED** that Sparks' remaining motions (Docs. 73, 81, and 91) are **DENIED as MOOT**.

The Clerk of Court is directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

The Clerk of Court is additionally directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. No reasonable person could suppose an appeal would have merit.

DATED this 14th day of July, 2022.

_____
Brian Morris, Chief District Judge
United States District Court

11